UNITED STATES of America, Appellee,

v.

Theodore "Ted" HERN, Jr., Appellant.

No. 90–1877.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1990.

Decided Feb. 27, 1991.

---

**2.** The rejection of Jackson's other claim raised below is not challenged on appeal.

Gene Worsham, Little Rock, Ark., for appellant.

Lesa Jackson, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and CONMY,* Chief District Judge.

HENLEY, Senior Circuit Judge.

Theodore Hern, Jr. appeals from a judgment of the district court[1] entered upon a jury verdict finding him guilty of failing to record the receipt of firearms in violation of 18 U.S.C. § 923(g)(1) (Count I), failing to record the sale of firearms in violation of 18 U.S.C. § 922(b)(5) (Count II), conspiracy to sell firearms to nonresidents in violation of 18 U.S.C. §§ 371 and 922(b)(3) (Count III), and recording false statements in violation of 18 U.S.C. § 922(m). We affirm.

Hern was a federally-licensed firearms dealer doing business as Ted's Gun and Pawn Shop in Russellville, Arkansas. On January 8, 1987 undercover police officer Kelly Watkins went to the gun shop and informed Hern that he was interested in purchasing a gun, but that he was a convicted felon and needed to purchase a gun without any "paperwork."[2] Watkins testified that Hern reviewed his record books and advised him that a Jennings .22 caliber firearm was available, which Watkins purchased without paperwork. On March 24, 1987 undercover police officer Kimberly Powell also advised Hern that she wanted to purchase a gun, but did not want to complete any paperwork. Hern complied

---

* The Honorable Patrick A. Conmy, Chief Judge, United States District Court, District of North Dakota, sitting by designation.

1. The Honorable Elsijane T. Roy, United States Senior District Judge for the Eastern and Western Districts of Arkansas.

2. 18 U.S.C. § 922(b)(5) provides that "[i]t shall be unlawful for any ... licensed dealer ... to sell or deliver any firearm ... to any person unless the licensee notes in his records, ... the name, age, and place of residence of such person...." In addition, a Form 4473 must be completed for each sale. See 27 C.F.R. § 178.124. The purchaser completes part A of the form and the seller completes part B of the form.

and sold her a Bersa Lusber pistol. The officers reported the undercover sales to the Bureau of Alcohol, Tobacco and Firearms (ATF).

On November 2 and 3, 1987 ATF agent Paul Bishop conducted a compliance inspection of Hern's business. Bishop reviewed Hern's acquisition and disposition books and discovered that the Jennings weapon Hern had sold to Watkins had been recorded as having been sold in December, 1986 to Roy Alford and that the Bersa weapon sold to Powell had been recorded as having been sold in March, 1987 to Robert Jackson. Alford testified he had returned the gun to Hern because it was defective and Hern explained that the gun would have to be returned to the factory for repair. Jackson testified that he also returned the Bersa to Hern, but Hern did not remember Jackson returning the gun.

During the course of his inspection, Bishop also discovered a large number of transactions in which Hern recorded guns as having been sold the same day they were recorded as having been received in inventory. Bishop thought these transactions were unusual because inventory generally did not turn over so quickly. Hern explained to him that the transactions resulted from sales at gun shows. Lyle Grunland, a federally licensed firearms dealer doing business in Kansas, attended several gun shows in Arkansas. Grunland testified that he knew federal law prohibited him from selling weapons at the shows directly to Arkansas residents,[3] but was informed by a gun show promoter that for a fee Hern would act as a "middleman" and complete the necessary paperwork and record the sale of the firearms in his record

books. Grunland testified that he believed that Hern conducted at least one hundred transactions for him. Although Grunland stated he did not intend to violate the law, he acknowledged that use of a "middleman" was a "way of circumventing the law, which is a kind of sneaky way of saying it's not legal," and that in other states he would enter into partnerships with resident licensed dealers. Robert Longinotti, Michael Griffin and Derrel Smith testified that they purchased firearms at gun shows from one of Grunland's businesses, and not Hern, and produced cancelled checks or receipts in support.

On appeal Hern argues that the district court erred in denying his motion for acquittal on the ground of insufficient evidence. "A district court has very limited latitude in ruling on a motion for judgment of acquittal." *United States v. Jewell,* 893 F.2d 193, 194 (8th Cir.1990). " 'A motion for judgment of acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged.' " *Id.* (quoting *United States v. Mundt,* 846 F.2d 1157, 1158 (8th Cir.1988)).

Before reviewing Hern's allegations concerning the sufficiency of the evidence, we address the penalty provisions of the Firearms Owners' Protection Act (FOPA) set forth in 18 U.S.C. § 924(a).[4] "Normally, the mens rea for a crime is set out as part of the substantive offense, not as part of a penalties provision, as in section 924(a)." *United States v. Sherbondy,* 865 F.2d 996, 1001 (9th Cir.1988). In *Sherbondy,* the

---

**3.** 18 U.S.C. § 922(b)(3) provides that "[i]t shall be unlawful for any ... licensed dealer ... to sell or deliver ... any firearm to any person who the licensee knows or has reasonable cause to believe does not reside in ... the State in which the licensee's place of business is located...."

**4.** Section 924(a)(1) provides for a fine not to exceed $5000 and a term of imprisonment not to exceed five years for whoever:

(A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the

records of a person licensed under this chapter ...;

(B) knowingly violates subsection (a)(4), (a)(6), (f), or (k) of section 922;

(C) ... or;

(D) willfully violates any other provision of this chapter....

Section 924(a)(3)(B) provides for a fine not to exceed $1000 and a term of imprisonment not to exceed one year if a licensed firearms dealer "knowingly" makes a false statement in violation of § 922(m).

court explained that "[t]he earliest versions of FOPA required that all offenses be 'willful,'" but that the "Treasury Department, along with various witnesses and members of Congress, objected that, with respect to certain serious offenses, ... the government should not be required to prove intent to violate the law." *Id.* at 1002. "In response to this objection, Congress reduced the mens rea requirement for the most serious offenses from 'willfully' to 'knowingly.'" *Id.* In *Sherbondy*, the court held that a "knowing" violation did not require proof of knowledge of the law, noting there are "few exceptions to the rule that ignorance of the law is no excuse."[5] *Id.* The court, however, did not decide what would constitute a "willful" violation. *Id.* at 1003 n. 9. In this appeal, Hern assumes, and the government does not dispute, that "willful" means an intentional violation of a known legal duty.[6] Hern asserts, and the government appears to agree, that Counts I, II and III required proof of willful violations. Hern argues there was insufficient evidence of willfulness.

■ Hern first argues there was insufficient evidence to establish that he willfully failed to record the receipt of the Jennings and Bersa weapons,[7] noting there was no direct evidence of his intent. We disagree. Willfulness and intent need not be proven by direct evidence, but "may also be proven by circumstantial evidence and frequently cannot be proven in any other way." *United States v. Lanier*, 838 F.2d 281, 283 (8th Cir.1988) (per curiam). In this case, we believe a jury could have reasonably found that Hern willfully failed to record the receipt of the Jennings and Bersa weapons, especially in light of the subsequent unrecorded sales of the weapons to officers Powell and Watkins.

Hern also argues that there was insufficient evidence to establish that he willfully failed to record the sales to Powell and Watkins. He attacks the officers' credibility and notes that his father testified that on March 24, 1987 he sold the Bersa to a man who left the shop with the gun before completing the paperwork. However, "[i]t is the function of the jury, not an appellate court, to resolve conflict in the testimony or judge the credibility of witnesses." *Smalley v. United States*, 798 F.2d 1182, 1188 (8th Cir.1986) (quotation omitted).

■ We also reject Hern's assertion that there was insufficient evidence to sustain his conviction for conspiracy to violate 18 U.S.C. § 922(b), which prohibited Grunland from selling guns to Arkansas residents. Hern asserts there can be no conspiracy because Grunland testified it was not his intent to violate the law. However, this court has held that "[t]he government

---

5. We recognize that in *United States v. Traxel*, 914 F.2d 119, 122 n. 6 (8th Cir.1990), this court disagreed with the *Sherbondy* court's interpretation of "burglary" in the sentence enhancement provision of § 924(e). We, however, also recognize that in *Taylor v. United States*, —— U.S. ——, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court rejected this court's interpretation of "burglary" and cited *Sherbondy* with approval. In any event, we agree with *Sherbondy's* conclusion that a "knowing" violation of FOPA does not include an intent to violate the law. This interpretation is consistent with the definition of "knowingly" under the former Gun Control Act. *See United States v. Udofot*, 711 F.2d 831, 835–37 (8th Cir.) ("knowingly" means only that act was done voluntarily and intentionally and not by mistake or accident), *cert. denied*, 464 U.S. 896, 104 S.Ct. 245, 78 L.Ed.2d 234 (1983).

6. We believe the legislative history is consistent with this definition of "willful," *see, e.g.,* H.Rep. No. 99–495, 99th Cong.2d Sess., *reprinted in*
1986 Code Cong. & Admin.News 1327, 1352, and consistent with the term's use in other statutory contexts. *See, e.g., United States v. Jerde*, 841 F.2d 818, 821 (8th Cir.1988) (willfulness in context of failure to file tax returns "simply means a voluntary, intentional violation of a known legal duty") (quotation omitted); *United States v. Mills*, 835 F.2d 1262, 1265 (8th Cir.1987) (per curiam) (same in context of damage to government property); *United States v. Studna*, 713 F.2d 416, 418 (8th Cir.1983) (same in context of odometer fraud).

7. 18 U.S.C. § 923(g)(1)(A) provides that "[e]ach ... licensed dealer shall maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Secretary may by regulations prescribe." Hern's suggestion that the statute is inapplicable because "receipt" excludes receipt of a firearm returned due to a defect is clearly without merit in that it runs counter to the plain language of the statute.

need not prove the specific intent or knowledge of the alleged coconspirators...." *United States v. Austin*, 823 F.2d 257, 259 (8th Cir.1987), *cert. denied*, 484 U.S. 1044, 108 S.Ct. 778, 98 L.Ed.2d 864 (1988). "It need only show that defendant entered into an agreement with at least one other person, the objective of which was unlawful, and that one of those in agreement committed an overt act in furtherance of the objective." *Id.* Hern also argues that there was no evidence to establish that he intended to violate § 922, noting that he recorded the receipt and sales of the weapons in his books. We disagree. Although the use of a "middleman" may be common practice at gun shows, § 922(b) "is violated by a sham sale made to a resident when the transaction is really with a nonresident, and it is for the jury to decide, on all the relevant evidence ... whether such a charade occurred or whether there was a bona fide sale to a resident." *United States v. Brooks*, 611 F.2d 614, 619 (5th Cir.1980) (subsequent history omitted); *see also United States v. Lawrence*, 680 F.2d 1126, 1128 (6th Cir.1982) (toleration of sham sales would in effect be "tantamount" to repeal of gun control legislation). We agree with the government that there was sufficient evidence from which the jury could find that Hern knew the transactions were sham. We note that Grunland paid Hern a fee for his services and admitted it was the "consensus" at gun shows that "middleman" services were designed to circumvent the prohibition on sales to nonresidents. We also reject Hern's assertion that the recording of a sham transaction is not a false statement within the meaning of 18 U.S.C. § 922(m).[8] *See United States v. Brooks*, 611 F.2d at 616. *See also Smalley v. United States*, 798 F.2d at 1183 (court upholds conviction for conspiracy to violate § 922 where records falsely reflected sales of firearms).

8. Section 922(m) provides that "[i]t shall be unlawful for any ... licensed dealer ... knowingly to make any false entry in ... any record which he is required to keep pursuant to Section 923...."

9. The district court sentenced Hern to concurrent one year terms of imprisonment on Counts

 Last, Hern challenges his pre-Sentencing Guidelines sentence. Because we find that Hern's violations of the statutory sections were willful, we reject his assertions that the penalty provisions of 18 U.S.C. § 924 were inapplicable. We also reject his assertion that his sentence was excessive or that the district court abused its discretion in imposing imprisonment instead of probation.[9] While the totality of the sentence may seem harsh, in sentencing questions this court ordinarily will not substitute its judgment for that of the district court. *See United States v. Rosandich*, 729 F.2d 1512, 1512 (8th Cir.1984).

Accordingly, the judgment of the district court is affirmed.

I and IV, to a one year term of imprisonment on Count II to run consecutive to those in Counts I and IV, and suspended sentence on Count III and placed Hern on probation for three years to run consecutively with the sentences imposed on Counts I, II and IV. The court also imposed a $5000 fine.