

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-28-1995

# United States v Hayden

Precedential or Non-Precedential:

Docket 94-3349

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States v Hayden" (1995). *1995 Decisions.* Paper 236.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/236

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-3349
_____


UNITED STATES OF AMERICA

v.

WILLIAM O. HAYDEN,
                    Appellant


_____

On Appeal from the United States District Court
    for the Western District of Pennsylvania
        (D.C. Criminal No. 94-cr-00021)
        _____


Argued September 29, 1994

Before:  SCIRICA, NYGAARD and McKEE, <u>Circuit</u> <u>Judges</u>

(Filed August 28, 1995)


                    KAREN S. GERLACH, ESQUIRE (ARGUED)
                    Office of Federal Public Defender
                    960 Penn Avenue
                    415 Convention Tower
                    Pittsburgh, Pennsylvania 15222

                       Attorney for Appellant


                    MICHAEL L. IVORY, ESQUIRE (ARGUED)
                    BONNIE R. SCHLUETER, ESQUIRE
                    Office of United States Attorney
                    633 U.S. Post Office & Courthouse
                    Pittsburgh, Pennsylvania 15219

                       Attorneys for Appellee


1

———————————
OPINION OF THE COURT
———————————

SCIRICA, Circuit Judge.


Appellant William Hayden was convicted of receiving a firearm while under a felony "information," 18 U.S.C. § 922(n) (1988). The issue on appeal is the meaning of "willfully" in the statute's penalty provision, 18 U.S.C. § 924(a)(1)(D) (1988 & Supp. V 1993). We will reverse and remand.

I.

In January 1993, Pennsylvania authorities charged Hayden with receiving stolen property and with the unauthorized use of an automobile. Hayden received a copy of the criminal information, and he signed a form acknowledging receipt that was captioned, in capital letters, "RECEIPT OF COPY OF INFORMATION." Below the caption were the words, "I hereby certify that I have received a copy of the information filed by the District Attorney in the above-captioned action," and the accompanying document states that "[t]he District Attorney of Allegheny County by this information charges" Hayden with receiving stolen property and unauthorized use of automobiles and other vehicles.

A month after receiving the information, Hayden went to a firearms dealer and inquired about purchasing a pistol. The dealer told Hayden that there was a waiting period and that the Allegheny County Sheriff's Office and Pennsylvania State Police would be notified. Hayden then asked about purchasing a rifle.

3

In response, the dealer told him he must give proper identification, be eighteen years of age, and fill out a Bureau of Alcohol, Tobacco, and Firearms Form 4473, which was subject to ATF inspection.

Hayden purchased an AK-47, a semiautomatic rifle with a magazine capacity of one hundred rounds.  He also filled out a Form 4473 which defined the meaning of the words "indictment" and "information" and inquired:

> Are you under indictment or information*
> in any court for a crime punishable by
> imprisonment for a term exceeding one year?
> * A formal accusation of a crime made by a
> prosecuting attorney, as distinguished from
> an indictment presented by a grand jury.

Hayden answered "no" to this question, even though Form 4473 twice warned that it was unlawful to answer any of the questions falsely, stating that "[a]n untruthful answer may subject you to criminal prosecution."  Just above Hayden's signature, the form provided the following certification:

> I understand that a person who answers "Yes"
> to any of the above questions is prohibited
> from purchasing and/or possessing a firearm,
> except as otherwise provided by Federal Law.
> I also understand that the making of any
> false oral or written statement or the
> exhibiting of any false or misrepresented
> identification with respect to this
> transaction is a crime punishable as a
> felony.

The ATF ran a criminal history check on Hayden and found the information pending in Allegheny County.  Hayden was indicted and charged with one count of violating 18 U.S.C.

§ 922(n), receiving a firearm while under an indictment or information. At a non-jury trial, Hayden attempted to prove that his low intelligence and reading ability prevented him from understanding the document sent to him was an "information" and that, in purchasing a gun, he did not know he was violating the law. The district court prevented such testimony from Hayden and his experts, ruling that the government need not prove he knew he was violating the law. Hayden was convicted and sentenced to eight months in prison, three years of supervised release, and a $50 special assessment.

## II.

Hayden was charged under 18 U.S.C. § 922(n), which provides as follows:

> It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Section 922(n) has a corresponding penalty provision, found in 18 U.S.C. § 924(a)(1)(D), which provides:

> (a)(1) Except as otherwise provided in this subsection, subsection (b), (c), or (f) of this section, or in the section 929, whoever --
>
> (D) willfully violates any other provision of this chapter, shall be fined not more than $5,000, imprisoned not more than five years, or both. (emphasis added).

The district court had jurisdiction under 18 U.S.C. §3231 (1988). We have jurisdiction under 28 U.S.C. § 1291

5

(1988).  Because § 924(a)(1)(D)'s willfulness language involves statutory interpretation, our standard of review is plenary. United States v. Meraz, 998 F.2d 182, 183 (3d Cir. 1993).  We review the trial court's evidentiary rulings for an abuse of discretion.  United States v. Sampson, 980 F.2d 883, 889 (3d Cir. 1992).

III.

This case requires us to determine the meaning of the term "willfully" in 18 U.S.C. § 924(a)(1)(D).  The government contends that the term requires merely a purpose to commit the prohibited act.  But Hayden alleges "willfully" also requires that the government prove he intended to violate the law.  We believe that either interpretation is plausible.  Cf. Rachael Simonoff, Ratzlaf v. United States: The Meaning of "Willful" and the Demands of Due Process, 28 Colum. J.L. & Soc. Probs. 397, 397 (1995) (citing Model Penal Code) ("[T]wo interpretations of 'willful' have developed.  The first interpretation requires merely a purpose or willingness to commit the act.  The second requires, in addition, an intent to violate the law itself.").  As the Supreme Court has noted, "'Willful' . . . is a 'word of many meanings,' and 'its construction [is] often . . . influenced by its context.'"  Ratzlaf v. United States, 114 S.Ct. 655, 659 (1994) (citation omitted).

A.

In 1968, Congress barred persons convicted of or indicted for serious crimes from receiving firearms as part of a

6

comprehensive gun control package[0] "enacted in response to the precipitous rise in political assassinations, riots, and other violent crimes involving firearms, that occurred in this country in the 1960's." Lewis v. United States, 445 U.S. 55, 63 (1980). The offense appeared to contain no scienter requirement,[0] and courts interpreted it as either requiring no specific intent[0] or no scienter at all.[0]

Congress recognized later that without a mens rea requirement, the law could inflict severe penalties upon persons who unintentionally violated firearms offenses. So it passed the Firearms Owners' Protection Act of 1986, Pub. L. No. 99–308, 100 Stat. 449 (1986), which overhauled the system of firearms offenses. The Act "added a set of mens rea requirements by amending section 924(a)(1) to punish certain violations only if they are committed 'willfully' and others only if they are committed 'knowingly.'" United States v. Sherbondy, 865 F.2d

---

[0] Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90–351, tit. IV, 82 Stat. 197, 225, 231 (1968), as amended by the Gun Control Act of 1968, Pub. L. No. 90–618, 82 Stat. 1213 (1968) (codified as amended at 18 U.S.C. §§ 921–928 (1970)).

[0] See United States v. Sherbondy, 865 F.2d 996, 1001 (9th Cir. 1988) ("many of the firearms provisions were, on their face, strict liability offenses" prior to their amendment in 1986).

[0] See, e.g., United States v. Weiler, 458 F.2d 474, 477 (3d Cir. 1972) ("[W]e construe Section 922(g)(1) as a Congressional determination . . . that the transportation of firearms in interstate commerce by persons previously convicted of, or charged with, serious crime presents a serious hazard to the public welfare without regard to whether the one doing the transporting knows of the Gun Control Act.").

[0] See, e.g., United States v. Quiroz, 449 F.2d 583, 585 (9th Cir. 1971) (holding that defendants need not know their weapons were "firearms," within the meaning of the statute, because "§ 922(g), does not contain a scienter element").

7

996, 1001 (9th Cir. 1988). These new penalty provisions, which affected a range of firearms offenses contained in § 922, provide:

> **§ 924. Penalties**
>
> (a)(1) Except as otherwise provided in this subsection, subsection (b), (c), or (f) of this section, or in section 929, whoever--
>
>> (A) <u>knowingly</u> makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter;
>>
>> (B) <u>knowingly</u> violates subsection (a)(4), (a)(6), (f), (k), or (q) of section 922;
>>
>> (C) <u>knowingly</u> imports or brings into the United States or any possession thereof any firearm or ammunition in violation of section 922(l); or
>>
>> **(D) <u>willfully</u> violates any other provision of this chapter,**
>
> shall be fined not more than $5,000, imprisoned not more than five years, or both.

18 U.S.C. § 924(a)(1) (1988 & Supp. V 1993) (emphasis added). The "catch-all" provision, § 924(a)(1)(D), is applicable to the offense for which Hayden was convicted, § 922(n), but it is not

8

apparent from the face of the statute what the phrase, "willfully violates," is intended to mean.[0]

It took seven years from the time the Firearm Owners' Protection Act ("FOPA") was introduced in 1979 to its enactment in 1986. See David T. Hardy, The Firearms Owners' Protection Act: A Historical and Legal Perspective, 17 Cumb. L. Rev. 585, 585 (1987). Despite contradictory signals from lawmakers, id. at 645-53, the most consistent interpretation of § 924(a)(1)(D) is

---

[0]A discussion between Judge Learned Hand and Herbert Wechsler, the Reporter for the Model Penal Code, illustrates the difficulty in interpreting "willfully" in criminal statutes:

> JUDGE HAND: Do you use . . . [wilfully] throughout?  How often do you use it?  It's a very dreadful word.
>
> MR. WECHSLER: We will never use it in the Code, but we are superimposing this on offenses outside the Code.  It was for that purpose that I thought that this was useful.  I would never use it.
>
> JUDGE HAND: Maybe it is useful.  It's an awful word!  It is one of the most troublesome words in a statute that I know.  If I were to have the index purged, "wilful" would lead all the rest in spite of its being at the end of the alphabet.
>
> MR. WECHSLER: I agree with you Judge Hand, and I promise you unequivocally that the word will never be used in the definition of any offense in the Code.  But because it is such a dreadful word and so common in the regulatory statutes, it seemed to me useful to superimpose some norm of meaning on it. . . .

Model Penal Code and Commentaries § 2.02, at 249 n.47 (Official Draft and Revised Comments 1985) (quoting ALI Proceeding 160 (1955)).

that Congress intended "willfully" to mean that a defendant must know his conduct is illegal. As one author explained:

> Early versions of FOPA required a willful state of mind for any prosecutions. That this was understood to require knowledge of illegality is apparent from the report on S. 1030. The division between "willful" for some offenses and "knowing" for others originated in the Treasury-NRA negotiations, and was specifically premised upon an understanding that proof of willfulness required proof that the defendant knew of the illegality of his conduct. . . . In light of these extensive considerations, it is impossible to avoid the conclusion that Congress was fully aware that its use of "willfully" in FOPA would require proof that the defendant actually knew of the illegality of his acts.

Id. at 650-52 (footnotes omitted); cf. Sherbondy, 865 F.2d at 1002. In fact, a House report criticized the bill for its requirement of willfulness for some offenses, but noted that "[p]roponents of the willfulness standard argue that the offenses for which the standard would apply are mere regulatory offenses, for which a conscious and specific intent to violate the law should be required." H.R. Rep. No. 495, 99th Cong. 2d Sess. 11 (1986), reprinted in 1986 U.S.C.C.A.N. 1327, 1337.

Perhaps more persuasive than the legislative history is the statutory context in which the "willfully" language appears. As we have explained, the penalty provision of § 924(a)(1) requires defendants to "knowingly" act for offenses covered by the first three subparts thereto, § 924(a)(1)(A)-(C), but mandates they "willfully" violate the offenses covered by the final subpart, § 924(a)(1)(D). The Court of Appeals for the

10

Seventh Circuit noted the significance of this distinction: "Congress' use of the term 'willfully' in subsection (D) indicates that it intended a scienter standard there that is distinct from the 'knowingly' requirement of the previous three subsections." United States v. Obiechie, 38 F.3d 309, 314 (7th Cir. 1994).

In defining "knowingly," courts have almost uniformly rejected arguments that the term requires the defendant know his conduct was unlawful; rather, they have interpreted "knowingly" merely to require that the defendant know he was engaging in the prohibited conduct. Id. at 314-15; United States v. Hern, 926 F.2d 764, 767 n.5 (8th Cir. 1991); Sherbondy, 865 F.2d at 1001-03; United States v. Dancy, 861 F.2d 77, 80-82 (5th Cir. 1988); cf. United States v. Langley, No. 93-5219, 1995 WL 476634 (4th Cir. Aug. 14, 1995) (en banc). In light of the legislative history, it is difficult to understand what more the "willfully" language could require, if not knowledge of the law. See, e.g., Obiechie, 38 F.3d at 315 ("In our view, the only reasonable distinction between section 924(a)(1)'s 'knowingly' and 'willfully' standards is that the latter requires knowledge of the law."); Hern, 926 F.2d at 767 & n.6 (noting the defendant "assumes, and the government does not dispute, that 'willful' means an intentional violation of a known legal duty" and stating "[w]e believe the legislative history is consistent with this definition of willful").[0] Therefore, because of the legislative

---

[0] Although we recognize the Court of Appeals for the Second Circuit reached a contrary conclusion in United States v.

11

history and the context in which "willfully" and "knowingly" were added simultaneously to different provisions of the same statutory subsection, we hold that "willfully" in § 924(a)(1)(D) means the defendant must have acted with knowledge that his conduct was unlawful.

B.

Hayden contends that our interpretation of "willfully" here is controlled by the Supreme Court's decision in Ratzlaf v. United States, 114 S. Ct. 655 (1994). In Ratzlaf, the Supreme Court reiterated "the venerable principle that ignorance of the law generally is no defense to a criminal charge." Id. at 663; see also Cheek v. United States, 498 U.S. 192, 199 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system."). Nevertheless, Ratzlaf held that in particular contexts, such as the case then before the Court, "Congress may decree otherwise." 114 S. Ct. at 663.

We already have determined the definition of "willfully" in § 924(a)(1)(D) requires that a defendant know his conduct is unlawful, see supra part III.A, just as the Ratzlaf Court decided with regard to the statutes it construed.

_____

Collins, 957 F.2d 72, 76 (2d Cir.), cert. denied, 504 U.S. 944 (1992), we concur with the discussion of Collins in United States v. Obiechie, 38 F.3d 309, 315 (7th Cir. 1994) ("In reaching the opposite conclusion in Collins, the Second Circuit neither discussed Sherbondy and Hern, nor attempted to differentiate between FOPA's 'knowingly' and 'willfully' standards. Indeed, Collins failed even to note that FOPA applies a 'knowingly' standard to some violations and a 'willfully' standard to others.").

12

Nevertheless, we believe the Ratzlaf analysis is neither useful nor applicable here.

As in this case, Ratzlaf involved two statutory provisions, the first criminalizing the conduct and the second designating the penalty. Compare 18 U.S.C. §§ 922(n), 924(a)(1)(D) (at issue here) with 31 U.S.C. §§ 5324(a)(3), 5322(a) (at issue in Ratzlaf). In Ratzlaf, the offense barred transactions structured "for the purpose" of evading certain federal financial reporting requirements. 31 U.S.C. §5324(a)(3). Thus, the statute required that a defendant know he was evading reporting requirements and intend to do so. Section 5324's corresponding penalty provision, § 5322(a), set out punishments for persons "willfully violating" the statute. The government, however, contended that the "willfully violating" language of the penalty provision meant nothing, that "the 5324 offense is just what it would be if you never had 5322." 114 S. Ct. at 659 n.7.

The Supreme Court rejected that argument, holding that courts should hesitate to treat statutory terms as "surplusage." Id. at 659; see also United States v. Zehrbach, 47 F.3d 1252, 1261 (3d Cir.) (in banc) ("The [Ratzlaf] Court found that failure to read knowledge of illegality into a violation prosecuted under § 5322 would -- in light of § 5324's purposefulness requirement -- treat '§ 5322(a)'s willfulness' requirement essentially as surplusage."), cert. denied, 115 S. Ct. 1699 (1995). The Ratzlaf Court also found it significant that courts of appeals consistently had interpreted the § 5322 "willfulness" requirement, as applied to other offenses in the same subchapter,

13

to require both "'knowledge of the reporting requirement' and a 'specific intent to commit the crime,' i.e., 'a purpose to disobey the law.'" 114 S. Ct. at 659 (citations omitted). Finally, the Court rejected the claim that "structuring is so obviously 'evil' or inherently 'bad' that the 'willfulness' requirement is satisfied irrespective of the defendant's knowledge of the illegality of structuring." Id. at 662.

The considerations the Supreme Court found persuasive in Ratzlaf, however, are not present in this case. There is no attempt here to treat the language of the penalty statute as mere "surplusage." As we have noted, the criminal statute and corresponding penalty provision in Ratzlaf both contained mens rea requirements, the first requiring the conduct be done "for the purpose of" evading federal reporting requirements and the second penalizing those "willfully violating" the first. See 31 U.S.C. §§ 5324(a)(3), 5322(a). In this case, the criminal statute contains no mens rea requirement; only the corresponding penalty provision does. See 18 U.S.C. §§ 922(n), 924(a)(1)(D). In fact, Congress enacted the "willfully" language in the penalty provision in 1986 to ensure that the firearms statutes contained a mens rea element and would not be interpreted as strict liability offenses. See supra part III.A. Therefore, even if we had construed the "willfully" language here merely to require that defendants know they are committing the prohibited act, we would not be treating the term as "surplusage."[0]

---

[0]Besides its primary concern with treating statutory language as "surplusage," the Ratzlaf Court noted two other factors it found

14

In support of his position that <u>Ratzlaf</u> controls this case, Hayden cites our decision in <u>United States v. Curran</u>, 20 F.3d 560 (3d Cir. 1994), which applied the <u>Ratzlaf</u> willfulness standard to violations of a federal false statements statute. In <u>Curran</u>, the defendant was convicted of causing election campaign treasurers to submit false reports to the Federal Election Commission in violation of 18 U.S.C. §§ 2(b) and 1001. Section 1001 prohibits making false statements to a federal agency and requires that "the government must prove that prohibited conduct was performed 'knowingly and willfully.'" <u>Id.</u> at 567. Section

_____

persuasive. First, it found significant the fact that the courts of appeals consistently had interpreted the "willfully" language in the applicable penalty statute to require a purpose to disobey the law. 114 S. Ct. 655, 659 (1994). In this case, however, the courts of appeals are divided in their interpretation of § 924, the penalty provision at issue. <u>See</u> <u>supra</u> note 6.

Second, the Court rejected the claim that currency "structuring is so obviously 'evil' or inherently 'bad' that the 'willfulness' requirement is satisfied irrespective of the defendant's knowledge of the illegality of structuring." 114 S. Ct. at 662. This case involves firearms, which the Supreme Court has determined are not generally such dangerous devices as to "put gun owners on notice that they must determine at their hazard" whether ownership of certain weapons would constitute a crime. <u>Staples v. United States</u>, 114 S. Ct. 1793, 1798, 1800 (1994). This reasoning may not apply here, however, because those indicted for or convicted of felonies are routinely subject to restrictions not applicable to the general population; thus, they may be held to be on notice of the need to determine whether they are barred from certain ordinarily lawful conduct -- such as gun ownership. <u>Cf. Lewis v. United States</u>, 445 U.S. 55, 64 (1980) (noting that firearms control legislation "prohibits categories of presumptively dangerous persons from transporting or receiving firearms" and that "the fact of mere indictment is a disabling circumstance" under 18 U.S.C. § 922(h), the statutory predecessor to § 922(n)). Because the other factors persuasive to the Supreme Court in <u>Ratzlaf</u> do not exist here, we need not decide the applicability of this final factor.

15

2(b) provides that a person who "willfully causes" another person to commit a criminal act is liable as a principal.  Because the Curran defendant did not make the false statements himself, but caused campaign treasurers to do so, the government proceeded under "section 2(b) in tandem with section 1001."  Id.  Thus, Curran involved an interplay between two statutes, both containing a willfulness requirement, just as in Ratzlaf.  As we have noted, this interplay does not exist between the statutes involved in this case.[0]

We emphasize that Ratzlaf did not alter "the venerable principle that ignorance of the law generally is no defense to a criminal charge."  Ratzlaf, 114 S. Ct. at 663.  In fact, Ratzlaf "emphasized that its decision was particular to the plain meaning of the statute then before it."  Zehrbach, 47 F.3d at 1262

---

[0]In Curran, we also noted that both it and Ratzlaf involved a "defendant's knowledge of a third party's duty to disclose information to a government agency."  20 F.3d 560, 569 (3d Cir. 1994).  In both cases, without the duty to disclose information to the government, there would have been no offense.  For example, in Ratzlaf, the statute prohibited persons from acting "for the purpose of evading the reporting requirements" of structuring laws.  114 S. Ct. at 658.  Likewise, in Curran, 18 U.S.C. § 1001 prohibited persons from making false statements to a federal agency or department, and 18 U.S.C. § 2(b) barred persons from "willfully" causing others to commit a criminal act. The liability in Curran resulted from the defendant causing election campaign treasurers to submit false reports to the Federal Election Commission.  20 F.3d at 562.  Therefore, if there had been no duty to disclose information in Curran and Ratzlaf, then the defendants could not have committed those offenses.  In this case, however, Hayden was not charged with making a false statement on Form 4473 or causing another person to do so.  He merely was charged with illegal receipt of a firearm.  Although his false statement on Form 4473 may be relevant to prove whether he knew his conduct was illegal, it does not constitute an element or even directly involve the offense of which he was convicted.

16

(citing Ratzlaf).  Therefore, for the reasons we have expressed,

we believe the Ratzlaf analysis is inapplicable here.[0]

                              IV.

          Although we believe that "willfully" in § 924(a)(1)(D)

means a defendant must have acted with knowledge that his conduct

was unlawful, the question remains what quantum of proof suffices

for a conviction.  In this case, as we have noted, the ATF Form

4473 provided a certification of the purchaser's knowledge:

> I understand that a person who answers "Yes"
> to any of the above questions is prohibited
> from purchasing and/or possessing a firearm,
> except as otherwise provided by Federal law.
> I also understand that the making of any
> false oral or written statement or the
> exhibiting of any false or misrepresented
> identification with respect to this
> transaction is a crime punishable as a
> felony.

Hayden's signature appears on the form immediately below these

words.  Absent a disability, such as mental incapacity or

illiteracy, this certification should be sufficient to prove

knowledge of the law under §§ 922(n) and 924(a)(1)(D).[0]

---

[0] We recognize that the Court of Appeals for the Seventh Circuit relied on Ratzlaf in holding that the "willfully" language of § 924(a)(1)(D) required a defendant know his conduct was unlawful. United States v. Obiechie, 38 F.3d 309, 313-14 (7th Cir. 1994). But Obiechie is not inconsistent with the result we have reached here, because it merely followed Ratzlaf's command to interpret willfulness "by considering the context of the term's use within the overall structure of the statute," id. at 314, an analysis we undertook in section III.A.

[0] Of course, a defendant's knowledge could be proven other than by certification.  The back of Form 4473 provides instruction for cases when a "buyer is unable to read and/or write," and warns that "[t]he transferor (seller) of a firearm is responsible for determining the lawfulness of the transaction . . . ."  This frequently results in firearms owners reading aloud the questions on Form 4473 to buyers unable to read.  See infra part IV.B.

17

A.

Hayden contends his low intelligence and reading ability constituted such a disability, preventing him from understanding he was under indictment or information. Hence, he claims he did not know his conduct in purchasing the weapon was unlawful. But we have long recognized that defendants may not avoid the knowledge requirement of criminal statutes merely by ignoring the high probability they may be breaking the law. See, e.g., United States v. Caminos, 770 F.2d 361, 365-66 (3d Cir. 1985) (holding knowledge requirement satisfied if "defendant himself was subjectively aware of the high probability of the fact in question").[0]

This result comports with the rationale underlying the requirement that a defendant know he has been indicted. The requirement that the possessor know his status is necessary

---

[0]Cf. United States v. Hester, 880 F.2d 799, 803 n.4 (4th Cir. 1989) (citing Leary v. United States, 395 U.S. 6, 46 n.93 (1969)) ("[T]he [Supreme] Court has indicated general acceptance of the proposition that awareness of 'a high probability' that a fact exists may properly be equated with 'knowledge' in the interpretation of criminal statutes."); United States v. Jewell, 532 F.2d 697, 700 (9th Cir.), cert. denied, 426 U.S. 951 (1976).

In Hester, the court held that knowledge meant actual knowledge or "deliberate disregard for its truth or falsity with a conscious purpose to avoid learning the truth." 800 F.2d. at 802-03. We believe that this standard of "deliberate disregard for [] truth or falsity with a conscious purpose to avoid learning the truth" requires a defendant's subjective awareness of the fact in question, in this case, that he is breaking the law or that it is "high[ly] probab[le]" he is violating it. This standard does not permit a conviction when a defendant is merely negligent or reckless in failing to realize the unlawfulness of his actions. See United States v. Caminos, 770 F.2d 361, 365-66 (3d Cir. 1985).

18

because of the "special circumstances that may surround one under indictment, i.e., he may not be aware of the fact that he has been indicted because of failure to serve him on a secret indictment." United States v. Renner, 496 F.2d 922, 926 (6th Cir. 1974); see also United States v. Ballentine, 4 F.3d 504, 506 (7th Cir. 1993) ("Because there is a possibility that an indictment will remain sealed, a knowledge requirement would appear to be necessary to address the circumstance of a defendant's receiving a firearm while subject to an undisclosed sealed indictment. Without such a requirement, there could be unintended strict liability."), cert. denied, 114 S. Ct. 1222 (1994). Therefore, if a defendant knows he has been indicted or deliberately avoids ascertaining his status, and thereafter purchases a firearm, he will have satisfied the knowledge requirement of § 922(n).[0]

---

[0] Section 922(n) applies to "any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year." At oral argument, defendant's counsel asserted the government also must prove Hayden knew the crime for which he was under information carried a possible jail term of more than one year. We disagree. In Staples v. United States, 114 S. Ct. 1793 (1994), the Supreme Court interpreted 26 U.S.C. §5861(d), which makes it unlawful for anyone "to receive or possess a firearm which is not registered to him." The Court noted that United States v. Freed, 401 U.S. 601 (1971), already had determined that "§ 5861(d) does not require proof of knowledge that a firearm is unregistered." 114 S. Ct. at 1799. Staples concluded that "our determination that a defendant need not know that his weapon is unregistered suggests no conclusion concerning whether § 5861(d) requires the defendant to know of the features that make his weapon a statutory 'firearm'; different elements of the same offense can require different mental states." Id.; see also Freed, 401 U.S. at 610, 613-14 (Brennan, J., concurring) ("[M]ens rea is not a unitary concept, but may vary as to each element of a crime . . . . To determine the mental element required for conviction, each material element of the offense must be examined

19

B.

In this case, the district court prevented Hayden from presenting evidence of his knowledge of the information. Hayden contends the precluded testimony as to his low intelligence and reading levels would have established that he genuinely believed he was not under an information or at least would have raised a reasonable doubt in the jury's mind.

Evidence of low intelligence and reading ability is generally relevant in determining knowledge and is usually a jury question. In similar cases, some factfinders have not been convinced by such evidence or have chosen to believe contrary evidence offered by the government. In United States v. Fauntleroy, 488 F.2d 79, 80-81 (4th Cir. 1973), the defendant asserted an illiteracy defense when accused of knowingly making a false statement to a firearm dealer on a Form 4473. In Fauntleroy, however, the dealer read the form to the defendant. The court, in a non-jury trial, believed the defendant understood the form's questions and determined he knowingly made a false

---

and the determination made what level of intent Congress intended the Government to prove . . . ."). In this case, we believe the length of possible imprisonment is a separate element of the § 922(n) offense, one for which the defendant need have no mens rea. Cf. United States v. Yermian, 468 U.S. 63 (1984) (holding that, in offense of making false statement within jurisdiction of agency of United States, the federal agency element is a jurisdictional requirement only and conviction does not require the defendant knew of that element at the time of the offense); United States v. Dancy, 861 F.2d 77, 81-82 (5th Cir. 1988) (holding that §922(g), which bars convicted felons from receiving firearms transported through interstate commerce, does not require proof that a defendant had knowledge the weapon had an interstate nexus).

20

statement.  See also United States v. Petitjean, 883 F.2d 1341, 1347 (7th Cir. 1989) ("[T]here was conflicting testimony as to whether Petitjean was sufficiently literate to have read the ATF Form 4473. . . .  [I]n finding Petitjean guilty, the jury evidently rejected Petitjean's illiteracy defense."); United States v. Heath, 536 F.2d 1069, 1070 (5th Cir. 1976) (upholding conviction of illiterate defendant who made an "X" mark on a Form 4473 because "the jury must have credited the sales clerk's testimony that he asked defendant the required questions and that defendant responded falsely"); United States v. Brown, 458 F.2d 375, 376 (6th Cir. 1972) (upholding false statement conviction in case with dispute over whether gun shop owner had read Form 4473 to illiterate defendant because "determination of credibility was within the province of the jury").

We believe that Hayden's knowledge of whether he was under an indictment or information was central to his defense and indispensable to the factfinder in assessing whether he willfully violated § 922(n).  Because the district court prevented Hayden from offering such evidence regarding his low intelligence and reading ability, we conclude the district court erred.[0]

V.

In sum, the government must prove Hayden knew or deliberately disregarded the fact that he was under an

---

[0]Any use of expert testimony on remand must, of course, comply with Federal Rule of Evidence 704(b) (barring expert from offering "an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged").

information and that his purchase of a firearm was unlawful. Because the excluded evidence had a direct bearing on willfulness and was improperly excluded, we will reverse and remand.