# Richmond

CHARLES R. ROTHFUSS v. COMMONWEALTH OF VIRGINIA.

October 8, 1956.

Record No. 4541.

Present, Hudgins, C. J., and Eggleston, Spratley and Whittle, JJ.

The opinion states the case.

*R. S. Wright, Jr.*, for the plaintiff in error.

*Thomas M. Miller, Assistant Attorney General*, (*J. Lindsay Almond, Jr., Attorney General*, on brief), for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

Appellant, Charles A. Rothfuss, seeks by this writ of error to reverse a judgment entered on a verdict convicting him of perjury

and imposing a fine of $700.00. The decisive question presented is whether the evidence is sufficient to sustain the verdict.

The indictment for perjury is based on the testimony that appellant gave in his own behalf before the trial justice (now county judge) of Page county when tried on a warrant charging him with reckless driving. The events leading up to the trial of the reckless driving charge are not in dispute and may be summarized as follows:

At approximately 1 A. M. on February 4, 1955, appellant, who is a practicing physician, was *en route* to his home from a visit to a patient, driving alone in a 1954 Hudson Club Coupe on U. S. Route 340 in Page county. There were scattered patches of ice on the hard surface and ice on the shoulders of the road. As the appellant was rounding a right hand curve, traveling down grade, his automobile ran off the left side of the road, turned over and came to rest on its top with all four wheels in the air.

Appellant sustained a concussion of the brain and was unconscious for a short time. When he regained consciousness he found that he was pinned in the car and so remained for an hour or more. He finally succeeded in attracting the attention of two passing motorists, who pulled him out of the wreck and put him in their car. This was the situation at the scene of the accident when State Trooper K. E. Kerkhoff arrived. He took appellant out of the motorists' car and carried him to police headquarters, where he offered to telephone for a doctor. Appellant refused medical aid and telephoned his wife to bring splints for his broken ribs. The state trooper made a written report of the accident and issued a warrant or summons charging appellant with reckless driving. Appellant was carried to his home, where, on account of his injuries, he was confined to his bed for several days. The trial justice found appellant not guilty of reckless driving and dismissed the warrant.

Thereafter the grand jury, upon the testimony of K. E. Kerkhoff and others, returned the indictment in this case charging appellant with having committed perjury upon his trial for reckless driving in the following language:

". . . that upon the said Rothfuss being sworn as a witness as aforesaid, and touching upon the said matter then and there material to be inquired into, did upon the trial aforesaid, in the Court aforesaid, feloniously, wilfully, falsely, and corruptly, depose, swear and testify among other things, that at the time and place charged in the said summons, *the steering went out and the car was uncontrollable*

*pulling to the left; that the left 'A frame' had broken in three places because it had been heat treated to straigthen it and was weakened thereby; that the breaking of the 'A frame' caused the car to leave the highway to the left, climb a bank, turn over and wreck;* whereas in truth and in fact, the steering mechanism was in good working order at the time and place charged in the summons, the 'A frame' was not broken but was in one piece, and the cause of the car leaving the highway and wrecking was not in any way due to the breaking of the 'A frame' or to defective steering mechanism, whereby the said Charles A. Rothfuss did then and there and upon the trial aforesaid, and in the County aforesaid, feloniously, wilfully and corruptly swear falsely and did then and there feloniously commit wilful perjury, against the peace and dignity of the Commonwealth of Virginia."  (Italics added)

To prove the foregoing allegations the Commonwealth introduced, among other witnesses, Kerkhoff, the state trooper, who testified that appellant, when a witness before the trial justice on the reckless driving charge, testified that "he (appellant) was having some trouble with his front end, was having some work done on it.  He also stated that the reason he had the accident was because the A-frame which he was having the work done on had broken in three places and that caused the car to drop down and throw his car out of control and caused him to run off the highway. . . . ." that "he (appellant) couldn't steer it, it became uncontrollable."

This witness for the Commonwealth testified that the physical facts at the scene of the accident indicated that the appellant was going north; the skid marks showed that the car ran over the white line and off the left hand side of the road a distance of 51 feet over a 5-foot rock ledge; "It just turned over in midair and landed 40 feet away on top of the automobile, right on its top.  Then it skidded down the road and off of the road up against a bank for another 120 feet."  The only reasonable inference from these physical facts established by the Commonwealth is that the operator lost control of the car and that it pulled to the left and turned over.  What caused the loss of control is mere speculation.  The witness stated that he did not know what caused the accident, that it could have been caused by a number of things.

A part of the steering mechanism of the 1954 Hudson car, usually referred to as the "front suspension" includes a left and a right assemblage of numerous parts.  The top of the two supporting arms

for each assemblage is fastened to the main frame of the car and the lower ends are attached to or form a part of the front axle. These two supporting arms of each frame of the front suspension when connected form a figure similar to the letter "A", and are sometimes referred to as the left "A frame" and the right "A frame". A coil spring 8 to 10 inches long is fastened by bolts and nuts to a plate connecting the supporting arms of the "A frame". Shock absorbers, parts of the front suspension or "A frames", extend through the centers of the coil springs from the metal plate between the two arms up to the main body of the car. The purpose of the springs and shock absorbers is to lessen the effect of bumps and unevenness of the highway upon the occupants of the car.

Kerkhoff further testified that after the trial of the warrant for reckless driving he, with Frank Mauck and Charles L. Price, two automobile mechanics, examined the Hudson car "both underneath and the steering, and I couldn't find anything wrong with the car . . . that both wheels were turning properly in both directions. And after that we got the wrecker and backed it back toward the car and put two lines down to the bumper and pulled the car up by the bumper so that the front end was entirely off the ground. . . . It (the A frame) was intact. It was loose. I could take my hand— I did—feel the different bars on the different controls on the A-frame and steering, and some of them were loose, but none of them were broken."

The witness also stated that the "A frame" was out of line, and the connecting rods were bent and loose. In the beginning of Kerkhoff's testimony he said that the Hudson car was a "total wreck. . . . It was just bent up and torn all over."

Frank Mauck testified that he heard a part of appellant's testimony on the reckless driving charge, at which time he heard the appellant say the "A frame" was broken, the effect of which caused him to lose control of the car; that after appellant's first trial he examined the steering mechanism of the Hudson car, both on a level and with the front end raised, in the presence of the state trooper and Charles L. Price, and he "couldn't find no fault in the steering. . . . We found some stuff bent. . . ." The front end was out of line, the right "A frame" had been bent or broken and had been straightened some time before the accident. He did not examine the condition of the shock absorber, but he knew it was attached to the bottom of the "A frame" and to the top of the main frame of the car, and that

the purpose of the shock absorber is to take the shock off the front end and keep the car from bouncing up and down, that if a shock absorber becomes loose at the bottom end the car would sway down some, but "if you weren't driving at a high rate of speed you could stay under control."

Charles L. Price testified that he is an automobile mechanic and specializes in the work on front ends of cars; that he examined the steering mechanism of appellant's car and found on the left side that the "A frame" was bent but not broken, that the right "A frame" indicated that it had been bent or broken and in repairing had been given a "heat treatment"; that he found nothing wrong with the steering mechanism, that the front wheels responded to the operation of the steering wheel, and that the "A frames" were badly bent and out of line. This witness saw no breaks or cracks on either "A frame". He noticed that the right "A frame" had been broken and welded and that it was impossible to tell whether the bending of the "A frames" and scratches were the result of a recent or an old impact.

H. S. Farrar, Chief of Police of Luray, testified that he heard appellant testify in the reckless driving charge that "the only cause he (appellant) said he saw caused the wreck, (was that) the A-frame broke and let down on him."

Appellant testified, and this part of his testimony is not denied, that a short time prior to the accident on February 4, 1955, while his wife was driving the car, both the right and left "A frames" had been bent or broken and that the mechanic in repairing the damaged parts of the "A frames" had used heat to straighten them. Whether this welding weakened either or both of the "A frames" is a matter of opinion, and none of the witnesses for either the Commonwealth or appellant expressed any opinion thereon.

There is some conflict in the testimony as to that part of the alleged wilful and false statements to the effect that the "A frame" had broken in three places. On this issue three witnesses for the Commonwealth, Kerkhoff, Mauck and Price, testified. The substance of their testimony is that upon their examination of the car after the trial on February 23rd they found nothing wrong with the steering mechanism and that it worked properly. Each tried it on a level and while the front part was raised. They paid no particular attention to the shock absorber attached to the left "A frame"; they stated that the left "A frame" was out of line, bent back, rods were

bent and various connections loose; they saw no cracks or broken places in any part of the front suspension, and the assemblage was all in one piece.

The testing of the steering mechanism of a car when on a level or with the front end raised is quite different from testing such mechanism while the car is in motion and rounding a curve. The positive testimony of witnesses for the Commonwealth is that the car was a "total wreck", the connecting rods and the left "A frame" forming a part of the steering mechanism were bent, loose and out of line. No witness for the Commonwealth or appellant stated that these damages to the steering mechanism of the car occurred before or at the time of the accident on February 4th. If this was the condition of the car at the time of the accident, it seems incredible to conclude that the steering mechanism was in good condition and good working order.

The testimony for the Commonwealth does not prove beyond a reasonable doubt the allegation that the steering mechanism was in good working order at the time and place of the accident, or that the cause of the car leaving the highway and wrecking was not "in any way due" to defective steering mechanism.

■ The burden was on the Commonwealth to prove beyond a reasonable doubt not only that the statements the accused made under oath were false, but were known by him to be false at the time. This is stated in 2 Bishop on Criminal Law, 9th Ed. Sec. 1044c, p. 787, as follows: "To constitute perjury the statement made must not only be false but the person making it must know it to be so . . . 'a man cannot be said to have falsely and corruptly sworn to a fact if he in fact believed the fact stated by him to be true.' "

The pertinent part of the statute, Code Sec. 18-237, under which the Commonwealth instituted this prosecution, is as follows: "If any person to whom an oath is lawfully administered on any occasion *wilfully* swear falsely on such occasion touching any material matter or thing . . . he shall be guilty of perjury." (Italics added)

In 2 Wharton's Criminal Law, 12th Ed., Sec. 1513, p. 1785, it is said:. . . ." (F)alsity consists in knowingly affirming a condition without probable cause." *Commonwealth v. Cook*, 40 Va. (1 Rob.) 789; *Ex Parte Ellis*, 3 Okla. Criminal Appeals 220, 105 P. 184, 22 Ann. Cases 863, 25 LRA (NS) 653 and note.

■ Appellant testified that the day before his trial on the reckless driving charge, while his ribs were still bandaged and he was so

stiff and sore from his injuries he could not bend over, he took Elmo L. Dovell, an automobile mechanic, to the garage where his car was stored and asked him to examine it. Dovell crawled under the car and informed him that the front suspension "was cracked, or broken in two or three places, looked like it had been beat with a hammer." He believed this information to be true, relied upon it and so told the trial justice, although he did not give the name of the mechanic because he was not asked to do so. He, like the witness Kerkhoff for the Commonwealth, said he did not know what caused his car to become uncontrollable. Appellant was asked "Do you recall stating what would be the result if the left A-frame broke?" He replied: "Yes, sir. Mr. Woodward (the attorney for the Commonwealth) expressed his ignorance as to what an A-frame was. He had it mixed up with the frame of the automobile, and then he asked me what the effect would be, and I said it would cause a sudden shift in weight and the dropping of the side that broke."

Elmo L. Dovell, a witness for the appellant, testified that prior to the trial on the reckless driving charge he, at the request of appellant, examined the car and he found two or three cracks in the "A frame"; that the shock absorber had been pushed down through it and the rivets pulled out; that the connecting rods were bent, that the left "A frame" was bent and out of line from two to four inches, and that if this Hudson car had been operated around a curve to the right and the shock absorber had become detached the left front end would drop down, "throw the other side up", thereby causing the car to pull to the left.

Some time after appellant's acquittal of the reckless driving charge he had the front end of his car raised and examined it carefully in the presence of his former attorney, Robert Keyser, and Louis Bosley. They found, so appellant testified, that "the leading edge of the A-frame was pushed back and twisted under. The metal plate that the shock absorber fastens onto at the bottom was broken completely loose from the A-frame and there were numerous cracks or breaks . . . there is a fine edge between them in the A-frame itself." He added that the shock absorber is "inside the coil spring and bolts onto a plate . . . that comprises the 'A' of the A-frame."

The testimony of appellant as to the condition of his car after the wreck is corroborated by that of Robert Keyser and Louis Bosley. The latter in his testimony corrobrorated the testimony of Kerkhoff to the extent that the car was a total wreck. He also

said that the left "A frame" was twisted, rivets knocked out of it, with several breaks or cracks in it, and that the lower part of the shock absorber, which he said was a part of the "A frame", was broken loose from its fastening.

Perjury can only be established upon proof of knowledge of falsity of the alleged statements. It cannot be predicated where wilfulness and corruption are not proven. *Lambert v. People*, 76 N. Y. 220, 32 Am. Rep. 293; 41 Am. Jur. Perjury, Sec. 8, p. 7.

The record discloses that the Commonwealth failed to prove beyond a reasonable doubt that appellant knowingly and wilfully made any false statements of fact. His alleged statement as to the cause of the car becoming uncontrollable, leaving the highway and turning over is a mere expression of opinion, which, even if erroneous, is not perjury. 70 CJS 462.

For the reasons stated, the judgment of the trial court is reversed, the verdict of the jury set aside and the prosecution dismissed.

*Reversed and dismissed.*