**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Steven Ernest HESTER,
Defendant–Appellant.**

**No. 88–5612.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 13, 1989.

Decided July 31, 1989.

Jeffrey Theodore Twardy, Sr., for defendant-appellant.

Bonnie S. Greenberg, Sp. Asst. U.S. Atty. (Henry E. Hudson, U.S. Atty., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

PHILLIPS, Circuit Judge:

Steven Ernest Hester appeals his conviction by jury verdict on one count of knowingly making a false statement in connection with the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6) and on one count of unlawfully receiving a firearm in violation of 18 U.S.C. § 922(n). He challenges the sufficiency of the evidence to convict on the false statement count, and claims error in jury instructions that require setting aside the verdicts on both counts. We find no prejudicial error and affirm.

I

On March 15, 1988, while he was under a multi-count felony indictment by a grand jury of Prince George's County, Maryland, Hester purchased a 9 mm Uzi carbine from a gun dealer in Alexandria, Virginia. In making the purchase he was required by the attendant to complete a standard Bureau of Alcohol, Tobacco, and Firearms Form 4473. One of the questions on the form was this: "Are you under indictment or information* in any court for a crime punishable by imprisonment for a term exceeding one year? *A formal accusation of a crime made by a prosecuting attorney, as distinguished from an indictment presented by a grand jury." (Italics in original.) He answered this in writing: "No."

In the light most favorable to the government, the evidence concerning the circumstances under which Hester gave this indisputably false statement was as follows. On September 8, 1987, the Prince George's County grand jury had indicted Hester and a co-defendant on six felony counts: (1) assault with intent to commit murder; (2) conspiracy to commit murder; (3) assault with intent to maim; (4) assault with intent to disable; (5) assault with intent to beat, bruise and wound; and (6) unlawful use of a handgun in the commission of a felony. If convicted on these charges, Hester could have been sentenced to life imprisonment. Pursuant to the indictment, the state court clerk had issued a

summons requiring Hester to appear on September 25, 1987, for arraignment on the charges. Hester did appear on that day and was arraigned before a judge who summarized the charges, inquired whether Hester had a lawyer, advised him that he must return to court if by October 23, 1987, he did not have a lawyer, that pre-trial motions would be heard on December 2, 1987, and that trial was set for January 5, 1988. Thereafter Hester appeared at the county courthouse with his attorney on several occasions on matters relating to the charges, specifically on at least three separate occasions—on December 2, 1987, January 4, 1988 (when trial was apparently continued) and February 25, 1988. Around March 1, 1988, around two weeks before the gun purchase, Hester advised his lawyer, through a kinsman, of two friends who would testify as alibi witnesses in the pending state trial.

The attendant who sold Hester the Uzi carbine on March 15, 1988, while his trial on the Maryland indictment was pending, was a Colonel Carruthers. Except for one or two short interruptions, Carruthers was with Hester throughout the transaction, which lasted about thirty minutes. Carruthers gave Hester the form, instructed him that he had to answer each question on it truthfully, and that a "yes" answer to any of the questions would result in cessation of the sale. Carruthers remained with Hester while Hester completed the form. During this time Hester asked no questions about it, and Carruthers volunteered nothing about the meaning or import of any of the questions. In addition to answering the various questions including the one to which he gave the false answer, Hester signed at the end a certificate that the answers are "true and correct," and that he understood both "that a person who answers 'Yes' to any of the ... questions is prohibited from purchasing ... a firearm" and "that the making of any false ... statement ... with respect to this transaction is a crime...."

On trial, Hester defended against the false statement charge essentially by asserting lack of positive knowledge that he was under "indictment," and by disputing whether the false answer he concededly gave was "intended or was likely to deceive" the gun dealer. On the first point, he relied on the fact that no document and no oral communication had ever actually used the word "indictment" in identifying the source of the charges against him. Though he of course knew the nature of the charges and that he was "in trouble" when he completed the form, he did not *know* as fact that the charges and the "trouble" originated in an indictment as opposed to some other device. On the second point, he offered testimony that disputed the government's evidence as to what Carruthers told him and how long Carruthers was with him during the purchase transaction.

In instructing the jury on the scienter element of the false statement count, the district court told the jury, *inter alia*, that the government might prove that the defendant made a false statement in either of two ways: by proof beyond a reasonable doubt that he "was actually aware" of its falsity or, alternatively, that "he made it with the deliberate disregard for whether it was true or false with a conscious purpose to avoid learning the truth."

The jury convicted Hester on both the false statement and unlawful receiving counts, and this appeal followed.

II

As indicated, Hester challenges his conviction on the false statement count on the basis that the evidence was insufficient to allow a jury rationally to find beyond a reasonable doubt that he had "actual knowledge" that he was under "indictment" (as opposed to any other method of charging him with a criminal offense) and that he acted to "deceive" the seller.[1]

1. Both the prosecution and the district court apparently accepted Hester's theory that he could only be found guilty of making a false statement by proof that he knew at the critical time that he was in fact under "indictment." This was the factual theory on which the case was submitted to the jury, and it was on this

■ There are actually two prongs to Hester's argument on this point. The first, made only implicitly, in this argument, is that the scienter element of the false statement offense, as expressed in the word "knowingly," requires proof of "actual" knowledge.[2] The district court interpreted the requirement more broadly as including "deliberate disregard for its truth or falsity with a conscious purpose to avoid learning the truth," and so instructed the jury. Because the jury conceivably could have found the requisite knowledge on this alternative basis rather than on the basis of "actual" knowledge, it is necessary to decide whether "knowingly" as used in 18 U.S.C. § 922(a)(6) contemplates this alternative state of mind as well as "actual" knowledge. We conclude that, as defined by the district court, it does.

In so holding, we follow the view of other circuits which have held that "knowingly" or "knowing" as used in this and other false statement statutes embraces this state of mind as well as "actual" or "positive" knowledge. *See United States v. Wright*, 537 F.2d 1144, 1145 (1st Cir. 1976) ("reckless disregard as to the truth ... and ... conscious purpose to avoid learning the truth" satisfies "knowingly" requirement of § 922(a)(6)); *United States v. Thomas*, 484 F.2d 909, 912–13 (6th Cir. 1973) ("reckless disregard of whether the statements made were true or with a conscious purpose to avoid learning the truth" satisfies "knowingly" requirement of § 922(a)(6)); *United States v. Abrams*, 427 F.2d 86, 91 (2d Cir.1970) ("reckless disregard of whether the statements made were true and with a conscious purpose to avoid learning the truth" satisfies "knowingly and willfully" requirement of 18 U.S.C. § 1001);[3] *see also United States v. Jewell*, 532 F.2d 697, 700–04 (9th Cir.1976) (en banc) (where lack of positive knowledge is "*solely* and *entirely* a result of ... a conscious purpose to avoid learning the [critical fact]" the knowledge requirement of 21 U.S.C. § 841(a)(1) is satisfied). As Judge Feinberg explained in reaffirming the Second Circuit's rationale first adopted in *Abrams*, "Its purpose ... was to prevent an individual ... from circumventing criminal sanctions merely by deliberately closing his eyes to the obvious risk that he is engaging in unlawful conduct," *United States v. Sarantos*, 455 F.2d 877, 881 (2d Cir.1972). We accept this as a compelled interpretation of Congress' use of the word

narrow factual issue that the prosecution and defense joined both at trial and on appeal.

Because it was the theory submitted to the jury we review the sufficiency of the evidence on that basis, but we observe that it is a factual theory considerably more favorable to Hester than the undisputed evidence warranted. The question plainly put to Hester on the form was this, in fair paraphrase: "Are you now under any formal accusation, whether by indictment or information (a charge by a prosecuting attorney), for a crime punishable by imprisonment for a term exceeding one year?" This is a broader question than the narrow one whether he was under "indictment"; and his negative answer to it was a correspondingly broader statement of fact than that he was not under "indictment." It was a statement, "I am not now under formal accusation for such a crime either by grand jury indictment or a prosecutor's accusation by information," and it was therefore Hester's knowledge of the falsity of this broader statement of fact that properly could have been charged and put in issue by the government. The evidence was almost overwhelming that Hester knew that by *some* formal device he stood accused at the critical time of a crime of the requisite severity, hence over-whelming that in denying *that* fact he "knowingly" made a false statement, the gravamen of the offense.

2. The issue is only directly raised in Hester's challenge to the jury instructions, but necessarily applies more fundamentally to the question of the sufficiency of the evidence to convict on this alternative theory of "knowledge."

3. *Abrams* is the seminal Second Circuit case adopting this construction of the statute. It has been followed in a number of later cases that have rejected pleas for reexamining *Abrams'* rationale. *See United States v. Sarantos*, 455 F.2d 877, 880–82 (2d Cir.1972); *United States v. Egenberg*, 441 F.2d 441, 444 (2d Cir.1971). Indeed in *Sarantos*, the court specifically upheld as a permissible, though not favored, variation on the *Abrams* formulation a disjunctive form— "reckless disregard *or* conscious purpose to avoid learning the truth"—which had earlier been upheld in *Egenberg*. *Sarantos*, 455 F.2d at 881–82. It should be noted that the formulation we specifically uphold here is one that includes *both* "deliberate disregard for truth *with* conscious purpose to avoid learning the truth." No other formulation of the concept is before us.

"knowingly" in this context. To construe it in a way that would allow obviously available "positive" knowledge to be deliberately avoided precisely to escape culpability would confine this statute's reach in a way that Congress could not have intended. So to interpret the statute involves no risks of vagueness resulting in unfairness to citizens under its command. Anyone so aware of the risk of culpability from acquiring specific knowledge that he has taken steps deliberately to avoid that knowledge could have been under no misapprehension of the law's command in this respect.[4]

■ The evidence here obviously sufficed to support the jury's finding of knowledge in this alternative sense; indeed we think it also sufficed to permit an inference of actual, or positive, knowledge of the statement's falsity at the critical time.

Proof that a statement of particular fact is known to be false is seldom possible by direct evidence; reliance usually must be placed on circumstantial evidence of the defendant's necessary knowledge of related facts and of his conduct evincing knowledge. *United States v. Place*, 561 F.2d 213, 215 (10th Cir.1977). Here the circumstantial evidence that Hester knew when he made the statement in issue that it was false was sufficiently strong to permit the necessary inference. Hester had been present at a hearing in which he was informed of the obviously serious crimes with which he was charged. He had been represented by an attorney who obviously had discussed the charges with him and had appeared in court with him on matters related to the charges on several occasions.

He had provided the names of alibi witnesses to his attorney. He was told while filling out the form that his answers must be truthful, but when confronted with a question which obviously involved the existence of formal charges against him, he made no effort to clarify any element in it that might have suggested a need to know the exact form of the charges.

As Hester himself finally conceded, he certainly knew that he was "in trouble," as a result of formal charges of quite serious crimes. Construed in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we are satisfied that a jury rationally could have inferred from this evidence that, beyond a reasonable doubt, Hester actually knew when he made the statement in issue that it was false, or that he made it with deliberate disregard for whether it was true or false and with a conscious purpose to avoid learning the truth on the one narrow point he contests—whether he was under "indictment," as opposed to any other method of charging the offenses for which he obviously knew he was charged.

### III

Hester also challenges the court's jury instructions on several points, none of which has merit.

■ He complains that the court fatally confused the jury by inaccurately citing the relevant statutes and wrongly referring to the elements of the two offenses charged to him in the course of outlining the two

---

4. While the Supreme Court has not specifically addressed the propriety of reading this alternative meaning into the words "knowing" or "knowingly" as used in this and comparable statutes, the Court has indicated general acceptance of the proposition that awareness of "a high probability" that a fact exists may properly be equated with "knowledge" in the interpretation of criminal statutes. *See Leary v. United States*, 395 U.S. 6, 46 n. 93, 89 S.Ct. 1532, 1553 n. 93, 23 L.Ed.2d 57 (1969) (adopting formulation of § 2.02(7) of the Model Penal Code). We think that requiring proof *both* of a "deliberate

disregard for whether a statement is true or false" *and* "a conscious purpose to avoid learning the truth" sufficiently captures the requirement that a person cannot be found to have knowledge of a fact unless he is "aware of a high probability" that it exists. *But see United States v. Jewell*, 532 F.2d 697, 705–08 (9th Cir. 1976) (en banc) (Kennedy, J., dissenting) (comparable formulation—"conscious purpose to disregard ... with conscious purpose to avoid learning the truth"—does not equate with "awareness of high probability" of a fact's existence).

counts of the indictment. The errors identified were hypertechnical, minor ones that in total context of the instructions were harmless inadvertences that could have caused no substantive confusion.

He also challenges the court's instruction on the scienter element of the false statement count. As indicated in Part II, this instruction was a proper statement of the law.

Finally, he points out that at one point the court, instructing on the receiving count, improperly stated that it required a prior "conviction." Aside from the fact that this inadvertent mistake was later corrected, it was harmless even if uncorrected, being more favorable to the defendant than was the proper instruction.

AFFIRMED.