# United States Court of Appeals
## For the First Circuit

No. 07-1934

UNITED STATES OF AMERICA,

Appellee,

v.

WAYNE R. WHITNEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Howard, Circuit Judge,
Stahl, Senior Circuit Judge,
and Besosa, District Judge.[*]

Jeffrey Langholtz, for appellant.
Margaret D. McGaughey, Assistant United States Attorney, Appellate Chief, with whom Paula D. Silsby, United States Attorney was on brief for appellee.

April 28, 2008

---

[*]Of the District of Puerto Rico, sitting by designation.

**Besosa, District Judge.**  Appellant Wayne R. Whitney was convicted of violating 18 U.S.C. § 922(a)(6) by making a false statement to a firearms dealer during an attempt to purchase a firearm.  On appeal, Whitney argues that the trial judge erred in defining the term "knowingly," by refusing to give an explicit willful blindness instruction.  Whitney also challenges the trial judge's decision to admit evidence that he was arrested for violating a protective order entered against him three weeks before denying the existence of such an order on a federal firearms form. We affirm.

## I.  FACTUAL BACKGROUND

On or about May 23, 2005, Whitney attempted to acquire a small pistol from Norm's Gun & Ammo Shop in Biddeford, Maine.  As with any attempted purchase of a firearm from a licensed dealer, Whitney was required to fill out ATF Form 4473.  Whitney answered "No" to Question 12h, which asked whether he was under a court order restraining him from harassing a child or an intimate partner.[1]  At that time, however, he *was* under an "Order for Protection from Abuse" ("protective order") entered by the Maine District Court in

---

[1] Question 12h asked the following: "Are you subject to a court order restraining you from harassing, stalking, or threatening your child or intimate partner or child of such partner? (See Important Notice 7.)"  Important Notice 7 defines an "intimate partner" of a person as "the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, or an individual who cohabitates or has cohabited with the person."

Springvale with respect to his thirteen-month-old son, D., and the boy's mother, Shawn Armstrong.

On October 24, 2006, a one count indictment was returned by a grand jury charging Whitney with knowingly making a false statement to a firearms dealer in connection with the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6).[2]

## A.    Pretrial Motions

Prior to trial, Whitney proposed the following jury instruction:

> The phrase reckless disregard means that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. A finding beyond a reasonable doubt of an intent of the defendant to avoid knowledge or enlightenment would permit you to infer knowledge. United States v. Gonsalves, 432 F.3d 64, 70 (1st Cir. 2006). In order to prove that the defendant acted recklessly the government must prove that the defendant deliberately and purposely avoided learning what was contained in Form 4473.

Whitney also filed a motion in limine to exclude evidence that he was arrested for violating the protective order that produced

---

[2] Section 922(a) provides that "it shall be unlawful . . . (6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement . . . intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter."

the charges.[3]  He argued that records from the state court case (regarding the protective order), testimony by the deputy who served the protective order, and his admissions to investigators adequately established his knowledge of the protective order and rendered evidence of the arrest for violation of the protective order cumulative and prejudicial.

In its opposition, the Government alleged that it expected Whitney's defense would be that his false answer on the firearms form was not made intentionally.  In the Government's view, evidence that Whitney was arrested for violation of the protective order twenty-three days before he made the false statement did not tend to prove criminal disposition and was admissible under Rule 404(b) as proof of Whitney's knowledge of the protective order and the absence of mistake or accident.  The Government argued that proof of his arrest demonstrated that the protective order was "in the forefront of [Whitney's] mind" at the time he tried to buy a weapon.  The Government also argued that Rule 403 was satisfied because evidence that Whitney was _arrested_ for violating the protective order was stronger proof of his knowledge than was evidence that he was merely _served_ with the order.  Nevertheless, the Government suggested that any conceivable prejudice could be

---

[3] A copy of the motion in limine filed before the district court was not submitted by the appellant.

-4-

avoided by a stipulation that the Government proposed about Whitney's arrest.

At the pretrial hearing the court held that proof of Whitney's arrest on the protective order was admissible and found the arrest to be the "most probative information in terms of its nearness in time, and in terms of [the] significance of something like an arrest in terms of bringing it home to a defendant and causing him to remember." The district court further expressed that it would give a curative or limiting instruction to the jury at Whitney's request and would also consider the effect of any stipulation to which the parties entered. In the court's own words:

> I won't decide right now what might happen if the defendant stipulated that as of the time he signed the form, he knew that he was under such an order if the defense theory is somewhat narrower . . . in the sense of not understanding the question versus having knowledge. That might be a different issue. I don't have that precisely in front of me as we sit here, but on the current status of the case, where the defendant is challenging the knowingly requirement of the statutory violation, I will admit it as described.

When defense counsel tried to anticipate what the ruling would be if Whitney stipulated to limited facts about the arrest, the court replied that it had "left that aside because it wasn't clear to me what would be the case if that were to develop." The court then encouraged counsel to confer about the issue and indicated that it would "hear the argument depending upon what conclusion you reach, but that is something I left open."

The court also deferred the ruling as to defendant's proposed jury instruction.

## B.    The Trial

During the trial, the district court permitted Officer Mark Dyer of the Sanford (Maine) Police Department to testify regarding Whitney's arrest after he had violated the protective order. Officer Dyer testified that in May 2005 he took a complaint from Ms. Armstrong regarding a violation of a protective order. Dyer researched the protective order, determined that it had been entered against Whitney and decided to arrest him for violating it. Dyer then called Whitney and asked him to come to the police station because he had violated a protective order. A short time later, Whitney appeared at the police station and was arrested, booked, and taken to the York County Jail. No request for a limiting instruction was made with respect to Dyer's testimony.

At the close of the Government's case, defense counsel again asked for a willful blindness instruction; counsel read for the record his proposed jury instruction on reckless disregard, which the court declined to give.

The district court then charged the jury on the elements of a § 922(a)(6) violation. The court stated that it was a violation of federal law knowingly to make a false statement in connection with the purchase of a firearm. The court explained that to convict Whitney, the jury must be convinced beyond a reasonable doubt

first, that Whitney knowingly made the false statement; second, that the statement was made during an effort to buy a firearm from a licensed dealer; and third, that the statement was intended or likely to deceive the firearms dealer about a fact material to the lawfulness of the sale.  The court then indicated to the jury that it was not necessary for the Government to prove that Whitney knew he was violating the law.  Instead, he explained that § 922(a)(6) simply requires proof that the false statement was made knowingly.

The court later stated that a statement is false if untrue when made.  The court explained that a false statement was made knowingly if "the person making it knows that it is false, or demonstrates a reckless disregard for the truth, and with conscious purpose to avoid learning the truth, not acting merely by ignorance, accident or mistake".  It instructed the jury that a fact is "material" for purposes of § 922(a)(6) if it tends to influence the firearms dealer's willingness to sell a weapon, whether or not the dealer relies on the statement.

After concluding its instructions, the court stated its reason for refusing to give Whitney's requested charge and said that the charge it gave had followed United States v. Wright, 537 F.2d 1144 (1st Cir. 1976), and United States v. Santiago-Fraticelli, 730 F.2d 828 (1st Cir. 1984).  The trial judge further explained that his ruling was consistent with authority from the Second, Fourth and Ninth Circuits holding that "reckless alone is not enough, but that

when it's coupled with conscious avoidance of the truth, that it can be sufficient, and that is the instruction I gave here."

After deliberating for approximately an hour, the jury found Whitney guilty as charged.  Whitney was later sentenced to an eighteen-month prison term.

## II.  ANALYSIS

### A.  Jury Instructions

Whitney argues on appeal that the jury was unable to render a fair verdict because the trial court failed to instruct the jury properly on the issue of reckless disregard.  His main contention is that the trial judge incorrectly refused to give the jury charge about willful blindness that Whitney had proposed, and that understanding the difference between negligence and recklessness was essential to return a fair verdict because his defense was that, although aware of the protective order, he carelessly completed Form 4473.

We review de novo a preserved objection to the trial court's decision to give a requested jury instruction.  United States v. Mercado, 412 F.3d 243, 251 (1st Cir. 2005).  A trial court's refusal to give a particular instruction constitutes reversible error only if the requested instruction was (1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case.  Id. (quoting Seahorse Marine Supplies, Inc. v. P.R. Sun Oil

-8-

Co., 295 F.3d 68, 76 (1st Cir. 2002) (internal quotation marks omitted)).

A defendant has no right to insist on an exact wording of a jury instruction. United States v. McFarlane, 491 F.3d 53, 59 (1st Cir. 2007) (when the challenge concerns the form and wording of the instructions). Rather, "[w]ithin wide margins, the district court maintains discretion in the precise manner that it explains legal concepts to the jury." Id.

Section 922(a)(6) requires proof that the defendant knowingly made a false or fictitious statement. As we recently held, "[s]ection 922(a)(6) does not require a showing that appellant 'knowingly' violated the law; it simply requires proof that appellant knowingly made a false statement." United States v. Edgerton, 510 F.3d 54, 57 (1st Cir. 2007) (quoting United States v. Currier, 621 F.2d 7, 10 (1st Cir. 1980) (internal quotation marks omitted) (alteration in original)).

The parties seem to agree that the trial court accurately charged the jury about the elements of the offense. What the district court refused to give was an explicit willful blindness charge that would have asked the jury to consider whether Whitney "deliberately closed his eyes to what otherwise would have been obvious" and "purposely avoided learning what was contained in Form 4473." We believe that the court correctly instructed the jury and

that there is no reversible error in the language used to instruct the jury on willful blindness.

As we expressed in <u>Wright</u> (a case on which the trial court specifically relied), although § 922(a)(6) requires that the false statements be made "knowingly," "this scienter requirement can be met when there is a reckless disregard as to the truth of the statements to which one subscribes and when there is a conscious purpose to avoid learning the truth." 537 F.2d at 1145. As we later stated in <u>Santiago-Fraticelli</u>, "<u>Wright</u> holds that the scienter requirement of § 922(a)(6) is met when a person recklessly fails to ascertain the meaning of the questions contained in Form 4473, and simply answers the questions without regard to whether the answers are truthful." 730 F.2d. at 831. That is the language the trial court used while instructing the jury. While defining the term "knowingly," the trial judge was careful to say that a false statement is made knowingly if the person making it knows that it is false, or demonstrates a reckless disregard for the truth, and with a conscious purpose to avoid learning the truth, not acting merely by ignorance, accident or mistake.

Citing <u>United States</u> v. <u>Richardson</u>, 14 F.3d 666, 671 (1st Cir. 1994) (a conspiracy to possess and transport stolen property case); <u>United States</u> v. <u>Guerra-García</u>, 336 F.3d 19, 26 (1st Cir. 2003) (a conspiracy to transport an illegal alien case); <u>United States</u> v. <u>Cunan</u>, 152 F.3d 29, 32 (1st Cir. 1998) (a conspiracy to violate

-10-

drug laws and money laundering case), and without further analysis, Whitney asserts that the instruction given by the trial court "is inconsistent with prior instructions which this court has reviewed and approved."  Having reviewed those cases, however, it is clear that none of them stands for Whitney's proposition that an explicit willful blindness instruction in § 922(a)(6) cases must be given on demand.  In fact, our decisions have not required the inclusion of such language in a willful blindness instruction and none of the cases cited by Whitney dealt with a firearms prosecution under § 922(a)(6).[4]

**B.    Evidence of Whitney's Prior Arrest**

Whitney next argues that the district court erred in allowing evidence concerning his arrest on the protective order to be brought out at trial.  The parties disagree, however, on the applicable standard of review.  Because Whitney asserts that his motion in limine was "finally and unconditionally denied by the Court," he argues that the issue as to whether the court correctly allowed the testimony of Officer Dyer was preserved for appeal and should be reviewed for abuse of discretion.  <u>Crowe</u> v. <u>Bolduc</u>, 334 F.3d 124, 134 (1st Cir. 2003).

---

[4] In fact, as correctly stated by the Government, in each of Whitney's authorities the burden was on the Government to establish that the defendant knew the agreement was to commit an illegal act. Here, by contrast, the Government was required to prove only that Whitney knew the statement was false, not that in making it, he knew he violated the law.

The Government alleges that the court only ruled preliminarily on Whitney's motion in limine and that Whitney did not object later to any aspect of the evidence he now challenges. It further contends that Officer Dyer testified at trial, without objection, to having arrested Whitney on the violation of the protective order. Because of that, the Government argues that this issue should be reviewed for plain error only. See United States v. Reed, 977 F.2d 14, 17 (1st Cir. 1992) ("A motion in limine without subsequent, contemporaneous objection at trial, or other factors not present here, is ordinarily insufficient to preserve an evidentiary ruling for appeal.")

Having reviewed the transcript of the proceedings before the district court, it is clear that although the court heard extensive argument on the issue of the admissibility of evidence regarding Whitney's arrest for violation of the protective order, its decision was not final. In fact, the court expressed it was willing to entertain "any stipulation the parties might agree to that would limit any probative value", admonished Whitney's attorney that the issue was something "you clearly ought to discuss with the prosecutor and then I'll hear argument depending upon what conclusion you reach . . . [in terms of a stipulation], but that is something I left open." It is clear that its ruling was preliminary and subject to change in light of further negotiations

by the parties or the trial evidence. Therefore, our review is for plain error.

Under this standard, it falls to Whitney to show (1) that error occurred; (2) that the error was plain or obvious; and (3) that it affected substantial rights. <u>United States</u> v. <u>Olano</u>, 507 U.S. 725, 732-34 (1993). Even if the appellant satisfies the first three steps, reversal is not automatic. Instead, reversal on plain error review is a remedy that we will apply sparingly, and only to correct an error that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." <u>United States</u> v. <u>Colon-Nales</u>, 464 F.3d 21, 25-26 (1st Cir. 2006) (quoting <u>Olano</u>, 507 U.S. at 735-36) (internal quotation marks omitted)).

Even assuming that the motion in limine did preserve the objections stated in it, however, Whitney's argument would fail.

Whitney argues, again without further detail or analysis, that the trial judge erred when he allowed evidence of Whitney's previous arrest for the violation of the protective order. The substance of Whitney's contention is that his prior arrest was not relevant for purposes of establishing knowledge under § 922, and was evidence barred by Rule 404(b). He further posits that Officer Dyer's testimony regarding his arrest was prejudicial because his credibility was "paramount" in this case. Therefore, "[a]ny evidence tending to denigrate his character would unfairly draw a jury to doubt Whitney's claim that he was careless while attempting

to purchase the firearm" and the trial court exceeded what was necessary for the limited purpose of establishing knowledge.

The Government contends, however, that Whitney's challenge to the admission of evidence of his arrest should be rejected for various reasons. First, and as previously addressed, the Government states that the issue was not preserved for appeal. Additionally, it argues that the evidence was admissible under Rule 404(b) as proof of Whitney's knowledge and intent, and also was more probative than prejudicial, as Rule 403 requires. Finally, it argues that in light of the other, independent evidence that showed that Whitney knew he was subject to the protective order, which defense counsel himself argued was "pretty much overwhelming," any error in admitting evidence of the arrest was harmless. Having evaluated the parties' contentions, we conclude that the decision to admit evidence of Whitney's arrest for violating the protective order was correct.

Rule 404(b) allows "[e]vidence of other crimes, wrongs, or acts" to be introduced for certain permitted purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." There is a two-step analysis to determine admissibility of other acts as evidence under this rule. First, the court must decide whether the evidence is "'specially probative of an issue in the case' and is not merely offered to show the defendant's bad character or

-14-

propensity for crime." United States v. Smith, 292 F.3d 90, 98-99 (1st Cir. 2002) (quoting United States v. Frankhauser, 80 F.3d. 641, 648 (1st Cir. 1996)). Even if the special relevance is established, the evidence must still satisfy Rule 403.

Pursuant to Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As Rule 403 explicitly states, the law shields defendant "against unfair prejudice, not against all prejudice". Smith, 292 F.3d at 99 (quoting United States v. Candelaria-Silva, 162 F.3d 698, 705 (1st Cir. 1998)). We have consistently held that evidentiary rulings of this sort are reviewable for abuse of discretion only, and we "usually defer to the district court's balancing under Rule 403 of probative value against unfair prejudice." Id. at 99; accord, United States v. Currier, 836 F.2d 11, 18 (1st Cir. 1987). "Only rarely -- and in extraordinarily compelling circumstances -- will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." United States v. Li, 206 F.3d 78, 84-85 (1st Cir. 2000) (quoting Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988) (internal quotation marks omitted)). "Rule 403

tilts the balance in favor of admission." United States v. Rivera, 83 F.3d 542, 545 (1st Cir. 1996)

After considering both parties' arguments, the trial court expressed the following:

> As long as the defendant's state of mind at the time he signed the form is an issue, and I understand it to be an issue, the Government is entitled to put in this evidence as the most persuasive proof of what the defendant must have been aware of at the time he signed the form.

Turning to the Rule 403 balance, the court explained that the evidence was "not excessively prejudicial under Rule 403 because it's the most probative information in terms of nearness in time, and in terms of [the] significance of something like an arrest in terms of bringing it home to a defendant and causing him to remember."[5]

We agree with the district court's decision that evidence of Whitney's arrest three weeks before he completed the form was relevant to show that he was aware of the protective order against him at the time he signed the form. Its admission is not substantially outweighed by the Rule 403 factors. Whitney's attorney always had the option of asking for a limiting

---

[5] The trial judge expressed: "I certainly would give a curative or limiting instruction to the jury if the defense requests that, when it does come in. I would also entertain any stipulation that the parties might agree to that would limit any probative value." No such charge was requested.

instruction; he chose not to.  No error occurred.[6]  Thus, under Rule 403's deferential standard, we cannot find that the district court erred in admitting the evidence at issue.  Its Rule 403 determination was appropriate and should be affirmed.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[6] Even if we were to find a violation of Rule 403, we would regard any error as harmless because in addition to the evidence of Whitney's arrest, the "overwhelming" independent proof that Whitney knew he was under a protection from abuse order shows that this ruling could not have affected the outcome.