692 S.E.2d 265

**Russell Ernest SMITH**

v.

**COMMONWEALTH of Virginia.**

**Record No. 0364-09-1.**

Court of Appeals of Virginia,
Chesapeake.

April 27, 2010.

---

Steven B. Novey (Novey and Tomko Law Firm, on brief), for appellant.

John W. Blanton, Assistant Attorney General (William C. Mims, Attorney General, on brief), for appellee.

Present: KELSEY, HALEY, JJ. and BUMGARDNER, Senior Judge.

KELSEY, Judge.

The trial court found Russell Ernest Smith guilty of making a "false statement" on a firearm purchase form in violation of Code § 18.2-308.2:2. On appeal, Smith admits his statement was false but argues he lacked the necessary *scienter* as a matter of law. We disagree and affirm.

## I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth. *Commonwealth v. Hudson,* 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). This principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Parks v. Commonwealth,* 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted).[1]

---

1. Our examination of the record "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling." *Bolden v. Commonwealth,* 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008). In determining whether there is evidence to sustain a conviction, an appellate court "has a duty to examine *all the evidence* admitted at trial that is contained in the record." *Hamilton v. Com-*

Smith was arrested on June 12, 2006, for felony possession of marijuana with intent to distribute. The general district court continued the case several times. Smith waived his right to a preliminary hearing and remained free on bail. Over a year later, on September 18, 2007, Smith's counsel wrote to advise Smith that the general district court had "certified" the charge "to the Grand Jury." On November 7, 2007, Smith's counsel wrote again to advise that the "trial date had been preset for January 11, 2008 at 10:00 a.m. in the Newport News Circuit Court. Your presence is required in court on that date." Counsel added a handwritten note to the letter: "Please give me a call to discuss case." A week later, on November 13, the grand jury issued an indictment against Smith.

Smith did not call his counsel as instructed. Instead, on November 15, he walked into a pawnshop and attempted to buy a 40-caliber handgun. He filled out several forms, including ATF Form 4473 issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, an arm of the United States Department of Justice. The ATF Form 4473 begins, in bold letters, with:

WARNING: You may not receive a firearm if prohibited by Federal or State Law. The information you provide will be used to determine whether you are prohibited under law from receiving a firearm. Certain violations of the Gun Control Act are punishable by up to 10 years imprisonment and/or up to a $250,000 fine.

Various questions follow the warning, including Question 11.b, which asked: "Are you under indictment or information in any court for a *felony,* or any other crime, for which the judge could imprison you for more than one year?" (Emphasis in original.) Smith wrote "No" in response to this question. Right above Smith's signature is a certification, which reads:

---

*monwealth,* 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010) (quoting in part *Bolden,* 275 Va. at 147, 654 S.E.2d at 586) (emphasis added).

I certify that the answers to Section A are true and correct. I am aware that ATF Form 4473 contains Important Notices, Instructions, and Definitions.... I understand that a person who answers *"yes"* to any of the questions 11.b through 11.k is prohibited from purchasing or receiving a firearm.... I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony.

The pawnshop manager refused to complete the sale after a computer background check revealed Smith's pending felony charge.

Charged with making a false statement on a firearm purchase form in violation of Code § 18.2-308.2:2, Smith took the stand in his own defense. He admitted reading ATF Form 4473 and answering its questions. At the time he filled out the form, Smith testified, he knew he had been charged with a felony and faced possible incarceration exceeding one year. He also knew he had earlier waived his right to a preliminary hearing. Smith likewise knew at the time he filled out the form that he had received letters from his counsel advising the felony charge had been certified to a grand jury and his trial had been preset for January 11, 2008.

Even so, Smith testified he had no idea what the word "indictment" meant. The prosecutor focused on this point:

Q: So when you got to the question, are you under indictment or information in any court for a felony or any other crime for which the judge could imprison you for more than one year, *you didn't know what the word indictment meant* in Section B?

A: *No.*

Q: Why did you then—no, you *didn't know what it meant?*

A: No, *I did not know what it meant.*

\*     \*     \*     \*     \*     \*

Q: Alright, so despite all those statements in there, you didn't know what one of the items was, you didn't know what indictment meant *and you still answered no?*

A: *Right.*

* * * * * *

Q: And it's your testimony here in today's court that despite all of those—despite having waived your preliminary hearing, despite having received these letters from Mr. Novey about your trial date, that *you still didn't know what an indictment was?*

A: *No, I didn't.*

App. 39–41 (emphasis added).

In closing argument, the prosecutor argued, "throughout this form it's asking you to understand what's going on. And we're talking about the understanding of the word indictment." "Not only that," the prosecutor continued, Smith "admits it on a form where all of these warnings pervade, do not answer this form if you do not understand it, do not answer this form because it may subject you to criminal liability. In the face of all that, he answered a question no to which he didn't even understand the word indictment." After denying Smith's motion to strike, the trial court found Smith guilty of making a false statement on a firearm purchase form in violation of Code § 18.2–308.2:2(K).

## II.

■ On appeal, Smith argues Code § 18.2–308.2:2(K) only punishes a firearm buyer who answers "a question on the form incorrectly, *knowing* at that time that the answer is incorrect." Appellant's Br. at 6 (emphasis in original). Working from that premise, Smith claims the uncontradicted evidence (his testimony) proved he did not know what the word "indictment" meant—thus he could not have possibly known he was under indictment. We follow Smith's logic but conclude it leads to a very different conclusion.

## A.

A firearm buyer violates Code § 18.2–308.2:2(K) when he "willfully and intentionally" makes a materially "false statement" on any "firearm transaction records as may be required by federal law." One such record is ATF Form 4473, which asks: "Are you under *indictment* . . . in any court for a crime punishable by imprisonment for a term exceeding one year?" *Richardson v. Commonwealth*, 21 Va.App. 93, 98, 462 S.E.2d 120, 123 (1995) (emphasis in original). Smith answered that question with an unqualified *no*. "The word 'no' in response to a question assuredly makes a 'statement.'" *Brogan v. United States*, 522 U.S. 398, 400–01, 118 S.Ct. 805, 808, 139 L.Ed.2d 830 (1998). And Smith's statement was false, as he was in fact under indictment at the time he filled out the ATF Form. Thus, the only issue is whether Smith made his false statement with the requisite *scienter*.

Smith sought to excuse his falsehood by claiming he did not know the meaning of the word "indictment" when he signed the ATF Form. Even if this were true, we fail to see how his excuse did anything but prove his deceit. If Smith did not know what an indictment was, he should not have *affirmatively* represented on the ATF Form that he was *not* under indictment. Asserting that you know something to be true when you obviously do not is as much a fraud as asserting something to be true when you know it is false. A person lies when he makes a false statement that he *knows* to be untrue. It is no less a lie if the person makes a false statement when he *knows* he *does not know* whether it is true or false.

Smith argues this commonsense understanding of *scienter* does not apply to false statements prosecuted under Code § 18.2–308.2:2(K). He cites no authority for this assertion, however, and we know of none. To be sure, all analogous precedents suggest the opposite.

Code § 18.2–308.2:2 applies to false statements on any "firearm transaction records as may be required by federal law." A knowingly false statement on the required ATF Form also violates 18 U.S.C. § 922(a)(6). The *scienter* ele-

ment of the parallel federal crime includes not only actual knowledge of the statement's falsity but also any *"deliberate* disregard for its truth or falsity with a *conscious* purpose to avoid learning the truth." *United States v. Hester,* 880 F.2d 799, 802 (4th Cir.1989) (emphasis added). This intentionality standard represents the unanimous view of all courts that have addressed the issue. While not binding upon us, we nonetheless find this unanimity of opinion highly persuasive.[2]

■ The common law takes a similar view of deceit. Common law perjury, for example, requires a willful and intentional falsehood. One cannot be negligently or recklessly perjurious. Even so, a "sworn misstatement made with *conscious* indifference to whether it is true or false is deemed equivalent to an allegation known to be untrue." Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 516 n. 56 (3d ed.1982) (emphasis added).[3] A person commits common law perjury when he makes a false statement under oath "without knowing at the time whether it is true or false, or without having enough knowledge to support a belief that it is true," 4 *Wharton's Criminal Law* § 577, at 296 (15th ed.1996), because the common law condemns not only "falsehood in express words" but also "falsehood in knowledge or mind," 3 Edward Coke, *Institutes of the Laws of England* *166 (4th ed. 1664)

---

**2.** *See United States v. Whitney,* 524 F.3d 134, 139 (1st Cir.2008); *United States v. Hayden,* 64 F.3d 126, 133 (3d Cir.1995); *United States v. Hester,* 880 F.2d 799, 802 (4th Cir.1989); *United States v. Santiago–Fraticelli,* 730 F.2d 828, 831 (1st Cir.1984); *United States v. Wright,* 537 F.2d 1144, 1145 (1st Cir.1976); *United States v. Thomas,* 484 F.2d 909, 912–14 (6th Cir.1973); *United States v. Squires,* 440 F.2d 859, 864 (2d Cir.1971); *United States v. Sanchez–Ramirez,* 495 F.Supp.2d 92, 116 (D.Me.2007); *United States v. Blosser,* 235 F.Supp.2d 1178, 1181 (D.Kan.2002); *United States v. Kozerski,* 518 F.Supp. 1082, 1093 (D.N.H.1981).

**3.** Virginia law "preserves the common law as the 'rule of decision' except when 'altered by the General Assembly.' Absent a clearly expressed legislative intent otherwise, statutes should not be construed to displace long-established common law principles." *Newman v. Newman,* 42 Va.App. 557, 566, 593 S.E.2d 533, 538 (2004) *(en banc )* (quoting former Code § 1–10, predecessor to Code § 1–200).

(archaic spelling modified).[4] Consequently, "falsity may be found in an intentional affirmation made without probable cause to believe it to be true." John L. Costello, *Virginia Criminal Law and Procedure* § 23.3[2], at 372 (4d ed.2008) (citing *Rothfuss v. Commonwealth*, 198 Va. 461, 466, 94 S.E.2d 532, 536 (1956)); *see also* Ronald J. Bacigal, *Criminal Offenses and Defenses* 473 (2009–10) (stating perjury includes making a false statement made "without regard to its truth or falsity").

The same can be said of analogous statutory crimes. A defendant makes a false statement for purposes of false pretense liability if the statement is untrue and is made "by one who knows it is untrue, believes it is untrue or is quite aware that he has *not the slightest notion* whether it is true or not." Perkins, *supra* at 379 (emphasis added). In law, as in ethics, there is no principled distinction between "the man who knows or believes his representation is false and that of the man who has neither knowledge nor belief concerning it, but nevertheless makes the representation, *neither knowing nor caring* whether it is true or false." *Id.* at 379 n. 94 (quoting *State v. Pickus*, 63 S.D. 209, 257 N.W. 284, 294 (1934)) (emphasis added).[5]

---

**4.** Modern perjury statutes have limited criminal liability to perjurious statements (like Smith's statement on the ATF Form) that are in fact untrue. *See Bronston v. United States*, 409 U.S. 352, 362, 93 S.Ct. 595, 601–02, 34 L.Ed.2d 568 (1973); *see also* John L. Costello, *Virginia Criminal Law & Procedure* § 23.3[2], at 371 (4th ed. 2008) ("The statement charged as perjurious must have been objectively false, otherwise the truth-determining process has not been impaired.").

**5.** Exactly this behavior has been uniformly described as purposeful deceit, not merely negligent misrepresentation. *See* 3 Wayne R. La-Fave, *Substantive Criminal Law* § 19.7f, at 132 n. 82 (2d ed. 2003) ("If he creates the impression that he believes something to be true when in fact he has no belief on the subject, he has purposefully deceived" (quoting *Model Penal Code* § 223.3, comment at 181–82 (1980))); William L. Prosser, *The Law of Torts* § 107, at 742 (5th ed. 1984) ("A defendant who asserts a fact as of his own knowledge, or so positively as to imply that he has knowledge, under circumstances where he is aware that he will be so understood when he knows that he does not in fact know whether what he says is true, is found to have the intent to deceive, not so much as to the fact itself, but rather as to the extent of his information."); 2 Dan B. Dobbs, *The Law of Torts* § 471, at 1346

## B.

Informed by these settled *scienter* principles, we find no error in the trial court's conclusion that Smith "willfully and intentionally" made a false statement in violation of Code § 18.2–308.2:2(K).

Smith *willfully* made a false statement because he made it "with a bad purpose; without justifiable excuse ... without ground for believing it is lawful...." *Richardson*, 21 Va.App. at 99, 462 S.E.2d at 123 (citation omitted). The trial court had ample reason to find Smith's "excuse" unjustified and his "purpose" bad, *id.*, for his excuse was itself a confession of deceit and his evident purpose was to make whatever statements he needed to make—whether or not he knew them to be true or false—in order to buy a handgun before his upcoming trial date. Sitting as factfinder, the trial court could likewise conclude Smith was aware of the unlawfulness of making a false statement. The ATF Form explicitly warned Smith that making a false statement on the form constitutes a crime. *See United States v. Hayden*, 64 F.3d 126, 132–33 (3d Cir.1995) (holding the ATF Form's warning of the illegality of making a false statement provided sufficient knowledge to the defendant to satisfy the willfulness requirement).

Smith *intentionally* made a false statement because he made it *purposefully*—not negligently, recklessly, or at any lesser degree of deliberateness. He did not mistakenly assume he knew what he was saying to be true. Nor did he merely fail to perform some reasonable amount of due diligence before filling out the ATF Form or claim to have read the form too hurriedly. Instead, he affirmatively asserted something to be true while all along *knowing* he did not know it to be true. This was, at its core, an intentional deceit.

In sum, we hold a firearm buyer makes a false statement under Code § 18.2–308.2:2(K) when he admits he does not

---

(2001) (stating that if one "falsely asserts a fact without caring whether it is true or not he probably if not certainly lacks a belief in its truth and it is entirely fair to treat the case as an intentional fraud").

know what the word "indictment" means, yet he nonetheless affirmatively declares on an ATF Form he is not under indictment when, in fact, he is. Doing so amounts to a "deliberate disregard for its truth or falsity with a conscious purpose to avoid learning the truth," *Hester,* 880 F.2d at 802— particularly where, as here, the false statement is made by a criminal defendant seeking to buy a handgun while on bail awaiting trial on a felony drug charge that had been pending for nearly a year and a half.

### III.

Because the evidence proved Smith willfully and intentionally made a false statement on an ATF Form in violation of Code § 18.2–308.2:2(K), we affirm.

*Affirmed.*

BUMGARDNER, J., dissenting.

I dissent. Russell Ernest Smith was convicted of willfully and intentionally making a materially false statement on the form required for the purchase of a firearm, Code § 18.2–308.2:2. He answered "no" to Question 11(b), which asked: "Are you under indictment or information in any court for a *felony,* or any other crime, for which the judge could imprison you for more than one year?" (Emphasis in original). He had been indicted for a felony two days earlier.

No evidence showed that prior to completing the form the defendant had received any form of notice of indictment. The letters received from his attorney advised that the charge was certified to the grand jury and that a trial date was set, but the term indictment appeared in neither letter. It never appeared in any written or oral form, statement, or instruction that the defendant saw, read, or heard. The defendant had no previous experience with a felony prosecution. He only appeared one time during these proceedings and that was in district court where he waived his preliminary hearing. At most, the evidence shows that the defendant knew he had

been charged but nothing suggests he had any appreciation that he would be indicted or that he had been indicted.

The majority does not convict the defendant for willfully and intentionally answering Question 11(b) falsely. It convicts him for the manner in which he answered the question; for answering without knowing the meaning of a term used in the query. Answering a question without understanding the meaning of the term employed is a form of deceit, but it is not the falsehood that this statute proscribes.

The defendant did not need to know the meaning of indictment, a precise legal term of art, to have answered the question of whether he was under indictment for a felony. To be under indictment is a precise legal status. To have that status before the law either applies to a person or it does not. An understanding of the indictment process is not necessary to answering a question of whether the status applies. The falsity proscribed by Code § 18.2–308.2:2 does not relate to one's comprehension of the question but to one's consciousness of the existence of the status. The material falsehood must address the fact of whether the applicant is under indictment.

No evidence showed that on November 15, 2007, the defendant was aware that he was under indictment for a felony. No evidence indicated the defendant purposely avoided knowing that his status before the law was that of a person indicted for a felony through action of a grand jury. It did not directly or indirectly show the defendant willfully and intentionally made the false statement. I would reverse.